## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

COLONY CAPITAL INC.,

                    Plaintiff,

-v.-

JAMES F. FLAHERTY III,

                    Defendant.

Civil Action No. 1:21-cv-04645

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Colony Capital, Inc.[1] ("CLNY"), by and through its attorneys O'Melveny & Myers LLP, hereby files this Complaint for Declaratory and Injunctive Relief against Defendant James F. Flaherty, III ("Flaherty"), and alleges as follows:

### NATURE OF THE ACTION

1.       CLNY seeks a declaration that it is not required to arbitrate a claim brought by Flaherty against CLNY in January 2019 before JAMS alleging CLNY has an obligation to indemnify him against certain sexual harassment claims asserted against Flaherty by a former executive assistant (the "Arbitration").

2.       As demonstrated below, CLNY has no obligation to arbitrate this claim because CLNY and Flaherty have not agreed to arbitrate any disputes between them.  Through the arbitration, Flaherty is attempting to enforce his alleged indemnification rights that arise from the Limited Partnership Agreement of Healthcare Opportunity JV, LP (the "Partnership

---

[1] At various points in time, CLNY was named "NorthStar Asset Management Group" and "Colony NorthStar, Inc." For simplicity, we refer to it as CLNY throughout this Complaint.

Agreement") he entered into with CLNY.  But the Partnership Agreement does not contain an arbitration clause, and in fact expressly designates the state and federal courts of New York, New York as the exclusive forum for the parties to enforce their rights under the Partnership Agreement.  Moreover, there is no other agreement between Flaherty and CLNY to arbitrate claims Flaherty purports to have under the Partnership Agreement.

3.    CLNY also seeks a declaration that Flaherty has no entitlement to indemnification from CLNY, because the Partnership Agreement specifies Flaherty may only seek indemnification from the partnership formed by the Partnership Agreement, not from CLNY as a limited partner.

4.    Accordingly, the Court should issue an order declaring that (1) CLNY has no obligation to arbitrate Flaherty's indemnification claim; and (2) Flaherty has no right to indemnification, contractual or otherwise, from CLNY.

## PARTIES

5.    Plaintiff CLNY is a company focused on investments in digital infrastructure that has a legacy healthcare vertical and is a Maryland corporation with its principal place of business located at 750 Park of Commerce Drive, Suite 210, Boca Raton, Florida 33487.

6.    Defendant Flaherty is an individual who resides in California.

## JURISDICTION AND VENUE

7.    The Court has personal jurisdiction over Flaherty because he has contractually consented to its jurisdiction.  (*See* Mahoney Aff. Ex. A (Partnership Agreement) § 12.9.)[2]

8.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because CLNY and Flaherty are residents of different states and the amount in controversy

---

[2] References to the "Mahoney Affidavit" refer to the Affidavit of Charles J. Mahoney in Support of Plaintiff CLNY's Order to Show Cause, filed herewith and dated May 24, 2021.

is in excess of $75,000, based on (1) Flaherty's claim that CLNY must indemnify him for attorneys' fees, mediation costs, and expenses he claims to have incurred; and (2) the attorneys' fees CLNY has incurred and will incur in disputing Flaherty's claim.

9.      Venue in this Court is proper because the parties have consented to venue in New York federal court.  (*See* Mahoney Aff. Ex. A (Partnership Agreement) § 12.9.)

## STATEMENT OF FACTS

### *The Partnership Agreement*

10.      On January 22, 2014, CLNY and Flaherty entered into the Partnership Agreement for the purpose of expanding CLNY's services to the healthcare industry.

11.      Pursuant to the terms of the Partnership Agreement, CLNY and Flaherty agreed to form a partnership named Healthcare Opportunity JV, LP.  (*See* Mahoney Aff. Ex. A (Partnership Agreement) §§ 1.2-1.3.)  Both CLNY and Flaherty are defined as "Partners" in Healthcare Opportunity JV, LP.  (*Id.* Schedule A.)

12.      Section 12.9 of the Partnership Agreement provides that the parties both consent to the exclusive jurisdiction of New York state (or federal) court sitting in New York county to resolve any disputes arising out of or relating to the Partnership Agreement.  In full, Section 12.9 states:

> Section 12.9. VENUE AND JURISDICTION. THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT SITTING IN NEW YORK COUNTY OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTNER MAY, IN ITS DISCRETION, ELECT THE STATE OF NEW YORK, NEW YORK COUNTY, OR THE UNITED STATES OF AMERICA, SOUTHERN DISTRICT OF NEW YORK, AS THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING. EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION IT MAY

> NOW OR HEREAFTER HAVE TO SUCH VENUE AS BEING
> AN INCONVENIENT FORUM. NOTWITHSTANDING THE
> FOREGOING, IN THE EVENT THE ACT REQUIRES THAT A
> SUIT, ACTION OR PROCEEDING ARISING OUT OF OR
> RELATING TO THIS AGREEMENT BE SUBMITTED TO THE
> COURT OF CHANCERY OR ANY OTHER COURT OF THE
> STATE OF DELAWARE, THE PARTIES HEREBY
> IRREVOCABLY SUBMIT TO THE JURISDICTION OF SUCH
> COURT WITH RESPECT TO SUCH SUIT, ACTION OR
> PROCEEDING. THE PROVISIONS OF THIS SECTION 12.9
> SHALL SURVIVE A BUY-OUT AND/OR THE TERMINATION
> OF THIS AGREEMENT.

> (Mahoney Aff. A (Partnership Agreement) § 12.9.)

13.   There is no arbitration clause in the Partnership Agreement.  (*See generally* Mahoney Aff. Ex. A (Partnership Agreement).)

14.   CLNY and Flaherty have not entered into any other agreement that would require arbitration of claims between them.

15.   Section 7.6(a) of the Partnership Agreement provides that Healthcare Opportunity JV, LP would indemnify both CLNY and Flaherty for any claims arising out of or incidental to the business of the Partnership, with some exceptions.  In full, Section 7.6(a) states:

> The Partnership shall indemnify and hold harmless the Partners and
> their respective members, partners and/or their respective officers
> directors, employees, agents, principals and Affiliates (individually,
> an "Indemnitee"), including, without limitation, members of the
> Executive Committee and the Managing Director, from and against
> any and all losses, claims, demands, costs, damages, liabilities,
> expenses of any nature (including reasonable attorneys' fees and
> disbursements), judgments, fines, settlements and other amounts
> arising from any and all claims, demands, actions, suits or
> proceedings in which the Indemnitee may be involved, or threatened
> to be involved, as a party or otherwise, arising out of or incidental
> to the business of the Partnership (excluding liabilities to any Partner
> (or its Affiliates) in connection with disputes between Partners or
> their Affiliates for breach of this Agreement or other matters),
> regardless of whether the Indemnitee continues to be a Partner, or a
> member, partner, Affiliate, officer, director, employee, agent,
> principal or affiliate as aforesaid at the time any such liability or
> expense is paid or incurred, to the extent the Indemnitee's conduct

did not constitute (i) fraud, (ii) misappropriation of funds, (iii) intentional breach of this Agreement or any law, (iv) an act or omission that was material to the matter giving rise to the claim, demand, action, suit or proceeding which (x) was committed in bad faith or (y) was the result of active and deliberate dishonesty; (v) in the case of any criminal proceeding, the Indemnitee having had reasonable cause to believe that his/its conduct was unlawful; or (vi) with regard to the Flaherty Limited Partner, his receipt of any payments, directly or indirectly, from or in respect of any Healthcare Assets or Healthcare Entities (or any other transaction involving the NAM Partners, NorthStar, the Partnership or any of their respective Affiliates) other than such payments as are contemplated by this Agreement or the Stock Grants (or any other fully executed agreement between the Flaherty Limited Partner, on one hand, and any NAM Partner, NorthStar or any of their Affiliates, on the other hand), unless otherwise previously approved by the Executive Committee.

(Mahoney Aff. Ex. A (Partnership Agreement) § 7.6.)

16.     Nowhere in the Partnership Agreement did CLNY agree to indemnify Flaherty. To the contrary, Section 5.2 of the Partnership Agreement made clear: "Except as otherwise provided by the [Delaware Revised Uniform Limited Partnership] Act, the debts, obligations and liabilities of the Partnership, whether arising in contract, tort, or otherwise, shall be the debts, obligations and liabilities solely of the Partnership, and no Partner shall be obligated personally for any such debt, obligation or liability of the Partnership. . . ."  (Mahoney Aff. Ex. A (Partnership Agreement) § 5.2.)

17.     Section 12.17 of the Partnership Agreement provides that the prevailing party in any litigation arising out of the Partnership Agreement is entitled to its reasonable attorneys' fees, costs, and disbursements.

### Meiko Dixon's Claims of Sexual Misconduct by Flaherty

18.     Meiko Dixon ("Dixon") was formerly employed by CLNY as an Office Manager and was assigned to work for Healthcare Opportunity JV, LP as Flaherty's Executive Assistant.

19.     As part of her employment with CLNY, Dixon agreed to a "Mutual Agreement to Arbitrate Claims."  (Mahoney Aff. Ex. B (Mutual Agreement to Arbitrate Claims).)  As part of this arbitration agreement, Dixon agreed to "consent to the resolution by arbitration of any and all claims, disputes, or controversies arising out of or relating to [her] application for employment, employment or termination of employment with [CLNY] by final and binding arbitration before a neutral arbitrator."  (*Id.*)

20.     Dixon's employment with CLNY ended in December 2017 and, thereafter, she entered into a severance agreement that included a general release of claims in favor of CLNY.

21.     Also in December 2017, Dixon accused Flaherty of engaging in inappropriate sexual misconduct in the workplace.  (Mahoney Aff. Ex. C (Dixon Demand Letter).)  Dixon did not assert—and has not asserted—any claims against CLNY.  (*Id.*)

### *Flaherty's Indemnification Demand*

22.     On January 17, 2018 and February 1, 2018, Flaherty served letters upon CLNY claiming that, among other things, CLNY had an obligation to indemnify him against Dixon's claim under the Partnership Agreement—despite neither Partner agreeing to indemnify the other under that agreement.  (Amdursky Aff. Exs. A-B (Demand Letters).)[3]

23.     While Healthcare Opportunity JV, LP is a valid and extant enterprise, it currently does not have, and may not in the future have, any liquidity to satisfy any indemnification it owes to Flaherty (or to CLNY).  On information and belief, Flaherty is seeking indemnification from CLNY, rather than Healthcare Opportunity JV, LP for this reason.

---

[3] References to the "Amdursky Affidavit" refer to the Affidavit of Eric J. Amdursky in Support of Plaintiff CLNY's Order to Show Cause, filed herewith and dated May 24, 2021.

24.     Pursuant to Section 7.6(c) of the Partnership Agreement, Healthcare Opportunity JV, LP provided Flaherty with access to insurance that covered him as an agent of Healthcare Opportunity JV, LP.

25.     CLNY responded to Flaherty's demand on February 15, 2018.  (Amdursky Aff. Ex. C (Response to Demand Letter).)  It explained it had no obligation to indemnify him under the Partnership Agreement or any other common law indemnification theory.

### *Flaherty's Arbitration Demand*

26.     Flaherty, through his attorney, served a demand for arbitration on Dixon and CLNY in January 2019.  He purported to include CLNY in the Arbitration based on his indemnification claim.  (*See generally* Mahoney Aff. Ex. D (Demand for Arbitration).)

27.     On February 6, 2019, CLNY, through its attorneys, served letters upon JAMS and Flaherty explaining that it was not obligated to participate in the Arbitration.  (*See generally* Mahoney Aff. Exs. E-F (Letters to JAMS and Flaherty).)  CLNY noted that the parties had never agreed to arbitrate any claims under the Partnership Agreement and in fact had expressly agreed that the state and federal courts of New York County would be the exclusive jurisdiction for resolving any dispute arising out of the Partnership Agreement.  (*Id.*)  It further explained that it would not be participating in the Arbitration unless ordered to do so by a New York court, pursuant to the exclusive choice-of-forum clause in the Partnership Agreement.  (*See* Mahoney Aff. Ex. E (Colony Letter to JAMS) at 1.)

28.     On March 4, 2019, Flaherty served a letter on JAMS asserting that the arbitral panel had jurisdiction over his indemnification claims.  (*See* Mahoney Aff. Ex. G (Flaherty Letter to JAMS) at 1.)  In this letter, Flaherty claimed his alleged right to indemnification arose

from the Partnership Agreement, but ignored the Partnership Agreement's forum selection clause.

29.     In response to various communications from JAMS and Flaherty, CLNY informed JAMS repeatedly (in letters dated on or about April 29, 2019; January 30, 2020; May 18, 2020; July 22, 2020, October 30, 2020, and February 25, 2021) that CLNY objected to the jurisdiction of JAMS and would not participate in the arbitration unless and until it was ordered to do so by a New York court in accordance with the terms of the Partnership Agreements.  (*See* Mahoney Aff. Exs. H-M.)

30.     In or about May 2020, Flaherty and Dixon scheduled a five-day arbitration for June 14-18, 2021 with the Arbitrator.  On May 29, 2020 and June 5, 2020, Flaherty served two subpoenas on CLNY seeking documents relating to Dixon's claims of sexual harassment against Flaherty.

31.     In or about July 2020, Flaherty and Dixon informed JAMS that they had entered into a settlement, which resulted in the dismissal of Dixon from the arbitration proceeding. In response to Flaherty seeking to enforce a subpoena against CLNY to produce documents relating to Dixon's underlying claims, CLNY sent letters to JAMS on July 22, 2020 and October 30, 2020 repeating its objection to participate in the arbitration proceeding and that it no longer needed to produce documents in a case that had been settled.  Neither JAMS nor Flaherty responded to the October 30, 2020 letter.

32.     On February 19, 2021, JAMS sent an invoice to Flaherty and CLNY requesting payment for the five-day arbitration that Flaherty and Dixon had scheduled for June 2021. CLNY sent a letter, dated February 25, 2021, repeating its position that it objected to the jurisdiction of JAMS and would not participate in the arbitration.  Thereafter, on April 2 and 19,

2021, JAMS informed Flaherty and CLNY in writing that it would cancel the arbitration unless it received payment for the five-day arbitration proceeding that Dixon and Flaherty previously scheduled.  (*See* Mahoney Aff. Exs. N-O.)  In response, on April 20, 2020, Flaherty informed JAMS that Flaherty had settled with Dixon, that CLNY had informed JAMS that it did not intend to participate in the arbitration, that Flaherty wished to proceed with a one-day arbitration proceeding (without CLNY appearing) and that Flaherty would pay an invoice for a one-day arbitration proceeding.  On April 20, 2021, JAMS stated that it would determine whether the arbitrator would agree to proceed with the arbitration and, if so, would send a revised invoice to Flaherty allowing for him to pay for a one-day arbitration proceeding without CLNY's participation.

33.     On April 26, 2021, JAMS confirmed the arbitrator determined he would allow Flaherty to pursue with his arbitration proceeding against CLNY despite Flaherty having no written agreement with CLNY to arbitrate disputes and in direct violation of the forum selection provision in the Partnership Agreement.  Accordingly, CLNY seeks relief from this Court to stay the arbitration and require Flaherty to litigate his dispute for indemnification in accordance with the terms of the Partnership Agreement in this Court.

## COUNT I: DECLARATORY AND INJUNCTIVE RELIEF STAYING ARBITRATION

34.     CLNY realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 33 as though fully set forth herein.

35.     It is axiomatic that arbitration is a matter of contract and that a party cannot be compelled to arbitrate a dispute when it has not agreed to do so.  *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 566-67 (S.D.N.Y. 2013).  Here, CLNY has not agreed to arbitrate the dispute raised in the Arbitration.  To the contrary, the parties have expressly agreed to litigate

those claims in the courts of New York.  Thus, there is no valid agreement to arbitrate the claims asserted in the Arbitration, and no obligation for CLNY to participate in that arbitration.

36.     An actual and justiciable controversy exists between CLNY and Flaherty with respect to the arbitrability of Flaherty's indemnification claim.

37.     The entry of a declaratory judgment with respect to whether CLNY is required to arbitrate its dispute with Flaherty is necessary and would be effective to resolve the controversy between CLNY and Flaherty.

38.     For these reasons, CLNY respectfully requests that the Court enter judgment declaring that CLNY has no obligation to arbitrate Flaherty's indemnification claim.

39.     In the alternative, CLNY asks the Court to permanently stay the Arbitration.

## COUNT II - DECLARATORY JUDGMENT THAT FLAHERTY IS NOT ENTITLED TO INDEMNIFICATION FROM CLNY

40.     CLNY realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 39 as though fully set forth herein.

41.     Flaherty's claim to indemnification arises under Section 7.6 of the Partnership Agreement.  Under New York law, a dispute over the interpretation of a contract is a matter of law for a court to decide.  *Int'l Multifoods Corp. v. Comm. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

42.     Flaherty and CLNY are both partners in the Healthcare Opportunity JV, LP formed by the Partnership Agreement.

43.     The plain language of Section 7.6 of the Partnership Agreement makes clear that Flaherty is not entitled to indemnification from CLNY because that provision provides that "[t]he ***Partnership*** shall indemnify and hold harmless the Partners . . . from and against any and

all losses, claims, demands, costs, judgments, fines, settlements, and other amounts arising from any and all claims, demands, actions, suits, or proceedings . . . arising out of or incidental to the business of the Partnership."  (Mahoney Aff. A (Partnership Agreement) § 7.6) (emphasis added).  The Partnership Agreement further provides in Section 5.2 that any "debts, obligations, and liabilities of the Partnership" will be "*the debts, obligations and liabilities solely of the Partnership, and no Partner shall be obligated personally for any such debt, obligation, or liability of the Partnership*."  (*Id.* § 5.2) (emphasis added).

44.     To the extent Flaherty is entitled to any indemnification, according to Sections 7.6 and 5.2 of the Partnership Agreement, *inter alia*, he must seek that indemnification from Healthcare Opportunity JV, LP, not from CLNY or any other partner.

45.     Flaherty also has no statutory claim to indemnification.

46.     An actual and justiciable controversy exists between CLNY and Flaherty with respect to Flaherty's claim to indemnification.

47.     CLNY seeks a declaratory judgment that Flaherty is not entitled to indemnification from CLNY, whether as a matter of contract or a matter of statute.

## PRAYER FOR RELIEF

WHEREFORE, CLNY respectfully requests that the Court enter an Order:

1.     Declaring that CLNY has no obligation to arbitrate Flaherty's indemnification claim;

2.     Awarding preliminary injunctive relief to stay the Arbitration Flaherty has instituted against CLNY;

3.     Declaring that Flaherty has no right to indemnification, contractual or otherwise, from CLNY;

4.      Awarding CLNY its reasonable attorneys' fees, costs, and disbursements in this action; and

5.      Granting CLNY such other relief as the Court may deem just and proper.


Dated: May 24, 2021                              Respectfully submitted,
       New York, New York


                                                 /s/ *Charles J. Mahoney*
                                                 Charles J. Mahoney
                                                 **O'MELVENY & MYERS LLP**
                                                 Times Square Tower
                                                 7 Times Square
                                                 New York, New York  10036-6537
                                                 Tel:  (212) 326-2000
                                                 cmahoney@omm.com

                                                 Eric J. Amdursky*
                                                 Kristin M. MacDonnell*
                                                 **Pro hac vice pending*
                                                 **O'MELVENY & MYERS LLP**
                                                 2765 Sand Hill Road
                                                 Menlo Park, California 94025
                                                 Tel:  (650) 473-2600
                                                 eamdursky@omm.com
                                                 kmacdonnell@omm.com

                                                 *Counsel for Plaintiff*
                                                 *Colony Capital, Inc.*